UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CLAUDIO POP<br>9402 Pleasant Lake Blvd.<br>Parma, OH 44130<br><br>*On behalf of himself and all others similarly situated,*<br><br>    Plaintiff,<br><br>  *v.*<br><br>PERMCO, INC.<br>c/o Statutory Agent<br>Highland Park Service Corp.<br>28601 Chagrin Boulevard, Suite 600<br>Cleveland, OH 44122<br><br>    *and*<br><br>GUYAN INTERNATIONAL, INC.<br>c/o Statutory Agent Peter Turner<br>28601 Chagrin Blvd. - #500<br>Cleveland, OH 44122<br><br>    Defendants. | CASE NO.<br><br>JUDGE<br><br>**PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>(Jury Demand Endorse Herein) |

Plaintiff Claudio Pop, on behalf of himself and all others similarly situated, by and through counsel, respectfully files this Class and Collective Action Complaint, and states and alleges the following:

**INTRODUCTION**

1. Plaintiff Claudio Pop brings this case to challenge policies and practices of Defendants Permco, Inc. and Guyan International, Inc. (hereinafter collectively referred to as "Permco" or "Defendant") that violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the statutes and common law of the State of Ohio. Plaintiff brings this case

as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" (the "FLSA Collective").  Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert factually-related claims under the wage-and-hour statutes of the State of Ohio (the "Ohio Class").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. This Court has supplemental jurisdiction over Plaintiff's claims under the statutes and common law of the State of Ohio because those claims are so related to the FLSA claims as to form part of the same case or controversy.

4. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

5. At all times relevant, Plaintiff Claudio Pop was a citizen of the United States and a resident of Cuyahoga County, Ohio.

6. Defendant Permco, Inc. is a Delaware corporation with its principal place of business in Portage County, Ohio.[1] According to records maintained by the Ohio Secretary of

---

[1] https://www.permco.com/ (accessed March 19, 2019).

2

State, Defendant Permco, Inc.'s resident statutory agent for service of process is Highland Park Service Corp., 28601 Chagrin Boulevard, Suite 600, Cleveland, OH 44122.

7. Defendant Guyan International, Inc. is a West Virginia corporation with its principal place of business in Cabell County, West Virginia.[2] According to records maintained by the Ohio Secretary of State, Defendant Guyan International, Inc.'s resident statutory agent for service of process is Peter Turner, 28601 Chagrin Blvd. - #500, Cleveland, OH 44122.

## FACTUAL ALLEGATIONS

### Defendants' Business

8. Defendants are a "leading manufacturer of high-pressure hydraulic gear/vane pumps and motors, flow dividers, intensifiers, and accessories."[3] Defendants' manufactured products include displacement pumps and motors.[4]

### Defendants' Status as Employers

9. At all times relevant, Defendants were employers within the meaning of the FLSA, 29 U.S.C. § 203(d), and employed non-exempt hourly employees, including Plaintiff.

10. At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r).

11. At all times relevant, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

12. Defendants operate and control an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

---

[2] *See* http://www.guyaninternational.com/about (accessed March 19, 2019).
[3] htttps://www.permco.com/#1 (accessed March 19, 2019).
[4] https://www.permco.com/products (accessed March 19, 2019).

13. Defendants were joint employers of Plaintiff pursuant to the FLSA and Ohio law as Plaintiff was employed jointly by Defendants; Plaintiff's work simultaneously benefited each Defendant; each Defendant acted directly and/or indirectly in the interest of each other Defendant in relation to the Plaintiff; there was an arrangement between the Defendants to share the Plaintiff's services; and/or each Defendant was not completely disassociated with respect to the employment of Plaintiff, including that Defendants shared control of Plaintiff. *See* 29 C.F.R. 791.2. Moreover, upon information and belief, the operations of Defendant companies are substantially interrelated, Defendants share common management, centralized control of labor relations, and common ownership.

**Plaintiff's, the FLSA Collective's, and Ohio Class's Employment Statuses with Defendants**

14. Plaintiff Claudio Pop has been employed by Defendants as an hourly employee since approximately November 2018 to the present. Plaintiff works as a CNC machinist.

15. At all times relevant, Plaintiff, the FLSA Collective, and Ohio Class were employees within the meaning of 29 U.S.C. § 203(e) and O.R.C. §§ 4111.01, *et seq*.

16. At all times relevant, Plaintiff, the FLSA Collective, and Ohio Class were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

**Defendants' Failure to Pay for All Hours, Including Overtime Hours, Worked**

17. The FLSA and Ohio law required Defendants to pay overtime compensation to their employees at the rate of one and one-half times their regular rate for the hours they worked in excess of forty. 29 U.S.C. § 207; O.R.C. §§ 4111.03, 4111.10.

18. Plaintiff and other members of the FLSA Collective and Ohio Class frequently worked more than forty (40) hours in a single workweek. For example, during the workweek of

4

January 21-27, 2019, Plaintiff Pop worked in excess of 80.25 hours, comprising of at least 40.25 hours of overtime.

19. However, while Plaintiff, the FLSA Collective, and Ohio Class frequently worked more than forty (40) hours in a single workweek, Defendants consistently failed to pay Plaintiff, the FLSA Collective, and Ohio Class for all hours worked, including overtime hours. 29 U.S.C. § 207.

*Defendants' Unlawful Time Rounding and Editing Policies*

20. One way Defendants shortchanged its employees and avoided paying overtime was through an unlawful rounding policy. This unlawful policy is spelled out in a "Time and Attendance Guidelines" policy posted on Defendants' employer notices board. The policy applied to all hourly employees. The policy states:



**TIME AND ATTENDANCE GUIDELINES**

1. All employees must clock In and Out.
2. If you clock in late you will be paid 15 minutes past your clock in time.
3. If you clock in 15 minutes early you will be paid from your orginal start time.
4. All employees must be at work station by orginal start time.
5. Disciplinary action will be taken for anyone not at work station by orginal start time.
6. If you forget to bring your time card you will be asked to return home. Disciplinary action could occur.
7. You will not be allowed to make up time for clocking in late.
8. If you are having issues with clocking in or out you must notify your supervisor.
9. If you know you are going to be late you must notify your supervisor in advance.
10. If you have any questions regarding time and attendance please see Mike Dalton Human Resource Department.

"Remember the time is based off of 15 minute increments"

5

21. This unlawful policy is further spelled out in a "tardiness" policy posting in the employee break room and near the employee timeclock. The policy applied to all hourly employees. The policy provides:



22. These policies violate the Department of Labor's regulations. The regulations require both that employees' time be rounded "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour" and that the method "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). Defendants' rounding policies also always round down an entire quarter of an hour and the rounding is always in Defendants' favor. The above rounding policies also caused Defendants to violate the FLSA and the Department of Labor's regulations by docking

6

compensable hours and pay, and thereby failing to pay for all hours suffered or permitted to work.

***Defendants' Unlawful Meal Deduction Policies and the Automatic Meal Deduction***

23. In addition to the above unlawful practices and policies, Defendants automatically deducted one half hour from hourly time worked each day for a meal period, despite the fact that hourly employees frequently did not receive meal periods and/or performed work during meal periods.

24. Hourly employees frequently do not receive meal periods and/or performed work during their meal period because of the substantial amount of work that they must perform each day.

25. During the time that hourly employees eat meals they, among other things, are required to perform work during their shifts.

26. Hourly employees are also interrupted during unpaid meal periods to perform work-related duties.

27. The work hourly employees perform during their meal period was required by Defendants, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities.

28. Upon information and belief, Defendants and/or other hourly employees' supervisor(s) regularly observe that Plaintiff and other hourly employees did not receive meal periods and/or performed work during the time they were not paid for meal periods.

29. Plaintiff and other hourly employees were denied significant amounts of overtime compensation because of Defendants' failure to pay Plaintiff and other hourly employees for the

unlawfully automatically deducted meal periods during weeks in which Plaintiff and other hourly employees worked in excess of forty (40) hours.

30. Defendants knowingly and willfully failed to pay Plaintiff, the FLSA Collective, and Ohio Class for automatically deducted meal periods during which Plaintiff, the FLSA Collective, and Ohio Class performed work.

### *Defendants' Failure to Pay for Pre-Shift Work*

31. In addition to the above unlawful payroll practices and policies, Plaintiff and Defendants' other hourly employees were required to perform pre-shift compensable work that was not paid. The unpaid pre-shift work was required by Defendants, was performed for Defendants' benefit, and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities.

32. Plaintiff and other hourly employees are required to clock in and out of an electronic time keeping system. However, hourly employees' hours are instead paid based on weekly handwritten records submitted to management from hourly employees' supervisors. These weekly handwritten records do not include pre-shift compensable work required by Defendants.

33. Prior to their shift starting time, Plaintiff and other hourly employees are required to interact with the CAP vending inventory system provided by MSC Industrial Supply to access and retrieve personal protective and other equipment including safety glasses, chemical irritant preventative lotions, sleeves, masks, aprons, and metal chip or rubber gloves. Accessing and interacting with the CAP vending inventory system was required by Defendants, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities. Moreover, hourly employees do not have

8

the option to access and interact with the CAP vending inventory system at home prior to their shifts.

34. Prior to their shift starting time, Plaintiff and other hourly employees are also required to retrieve tools and/or equipment necessary to perform their manufacturing work. Retrieving tools and/or equipment necessary to perform their manufacturing work was required by Defendants, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities.

35. Prior to their shift starting time, Plaintiff and other hourly employees are also required to don personal protective equipment including safety glasses, safety shoes and other equipment. Donning personal protective equipment was required by Defendants and ensured Defendants' compliance with Occupational Safety and Health Administration requirements, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities. Defendants' written policy specifically states "[t]he wearing of approved eye protection in the plant is mandatory and a condition of employment …. Safety shoes are required while on duty in the plant."

36. After accessing the CAP system, retrieving tools and/or equipment necessary to perform their manufacturing work and donning required equipment, Plaintiff and other hourly employees must walk to their assigned area on the production floor. Plaintiff and other hourly employees are not paid for the time spent walking from different areas in which they access the CAP system, retrieve tools and/or equipment necessary to perform their manufacturing work, and donning equipment, to their assigned area on the production floor. Time spent walking from areas in which they access the CAP system, retrieve tools and/or equipment necessary to perform their manufacturing work, and don equipment and walking to their assigned area on the

9

production floor was required by Defendants, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities.

37. Prior to their shift starting time, Plaintiff and other hourly employees are also required to inspect tools and equipment prior to starting work and to perform their manufacturing work. A written policy of Defendants specifically states that employees are required to "INSPECT tools and equipment for safe condition before starting work." Time spent inspecting tools and equipment and performing manufacturing work was required by Defendants, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities.

### *Defendants' Failure to Pay for Post-Shift Work*

38. In addition to the above unlawful payroll practices and policies, Plaintiff and Defendants' other hourly employees were required to perform post-shift unpaid compensable work. The post-shift work was required by Defendants, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities.

39. Post-shift compensable work included meeting and speaking with employees on the previous shift to discuss the work to perform and prior shift issues, and returning equipment and tools necessary to perform their manufacturing work. Meeting and speaking with employees and returning tools and/or equipment necessary to perform their manufacturing work was required by Defendants, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities.

40. In addition, after their shift ends, Plaintiff and other hourly employees must walk from their assigned area on the production floor to the areas in which they return tools and/or equipment necessary to perform their manufacturing work. Plaintiff and other hourly employees are not paid for the time spent walking from their assigned production area to the areas in which they return tools and/or equipment necessary to perform their manufacturing work. Defendants' written policy specifically states "[e]mployees should remain in their departments until the bell sounds designating shift end, breaks, lunch period or end of clean-up period."

41. The requirement to work overtime by hourly employees was unavoidable due to production/productivity quotas, and hourly employees were required to work unpaid overtime hours after their shift in order to complete their job duties.

42. Defendants' illegal pay practices were the result of systematic and company-wide policies originating at the corporate level – hourly employees were under instructions and significant pressure from Defendants to complete all job tasks within their scheduled shift time.

43. Plaintiff and other hourly employees frequently work ten (10) to fifteen (15) or more minutes outside the daily shift records submitted to management by their supervisors from which hourly employees are paid.

44. However, though this additional pre- and post-shift work was compensable under the FLSA, was required by Defendants, was performed for Defendants' benefit and constituted part of hourly employees' principal activities and/or was integral and indispensable to their principal activities, this additional pre- and post-shift work was not paid.

45. As a result of Defendant's failure to pay Plaintiff and other hourly employees for work performed before and after their shifts, Plaintiff, the FLSA Collective, and Ohio Class were denied significant amounts of overtime compensation.

46. The FLSA and Ohio law required Defendants to pay overtime compensation to their employees at the rate of one and one-half times their regular rate for the hours they worked in excess of forty. 29 U.S.C. § 207; O.R.C. §§ 4111.03, 4111.10.

47. Although Defendants suffered and permitted Plaintiff, the FLSA Collective, and Ohio Class to work more than forty (40) hours per workweek, Defendants failed to pay Plaintiff, the FLSA Collective, and Ohio Class overtime at a rate of one and one half times the regular rate of pay for all hours worked over forty (40) in a workweek. As a result, Plaintiff, the FLSA Collective, and Ohio Class were not properly paid overtime for many of their overtime hours worked as required under the FLSA, 29 U.S.C. §§ 201, *et seq.*, and Ohio law.

48. Defendants' failure to compensate Plaintiff, the FLSA Collective, and Ohio Class for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay violates the FLSA, 29 U.S.C. § 207 and corresponding Ohio law.

### Defendants' Record Keeping Violations

49. The FLSA and Ohio law required Defendants to maintain accurate and complete records of employees' time. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); Ohio Const. Art. II, § 34a. For example, Ohio law provides that employers "shall maintain a record of the name, address, occupation, pay rate, hours worked for each day worked and each amount paid an employee for a period of not less than three years following the last date the employee was employed." Ohio Const. Art. II, § 34a.

50. Defendants violated federal and state record-keeping requirements by failing to maintain accurate and complete records of employees' time.

### The Willfulness of Defendants' Violations

51. Defendants knew that Plaintiff, the FLSA Collective, and Ohio Class were entitled to overtime compensation pay under federal and state law or acted in reckless disregard for whether they were so entitled.

52. Defendants intentionally and willfully circumvented the requirements of the FLSA and Ohio law.

### COLLECTIVE ACTION ALLEGATIONS

53. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

54. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

55. The FLSA Collective consists of:

All present and former hourly employees of Defendants during the period of three years preceding the commencement of this action to the present.

56. Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were non-exempt employees of Defendants, all were subjected to and injured by Defendants' unlawful practice of failing to pay overtime compensation for all hours worked in excess of forty per workweek, and all have the same claims against Defendants for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

57. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

58. Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that they consist of over 100 persons. Such persons are readily identifiable through the payroll records Defendants have maintained, and were required to maintain, pursuant to the FLSA.

## CLASS ACTION ALLEGATIONS

59. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

60. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons who assert claims under the laws of the State of Ohio (the "Ohio Class"), defined as:

> All present and former hourly employees of Defendants during the period of two years preceding the commencement of this action to the present.

61. The Ohio Class is so numerous that joinder of all class members is impracticable. Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of over 100 persons. The number of class members, as well as their identities, are ascertainable from the payroll records Defendants have maintained, and were required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c) & 29 C.F.R. § 516.2; Ohio Const. Art. II, § 34a.

62. There are questions of law or fact common to the Ohio Class, including but not limited to:

> Whether Defendants paid overtime compensation to Plaintiff and other Class Members at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek;

> Whether Defendants' failure to pay overtime compensation to Plaintiff and other Class Members at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek was willful; and

>What amount of monetary relief will compensate Plaintiff and other members of the class for Defendants' violation of O.R.C. §§ 4111.03 and 4111.10.

63. Plaintiff's claims are typical of the claims of other members of the Ohio Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of other class members.

64. Plaintiff will fairly and adequately protect the interests of the Ohio Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other class members. Plaintiff's counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Class in this case.

65. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

66. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

67. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

68. Plaintiff brings this claim for violation of the FLSA's overtime provisions.

69. The FLSA requires that "non-exempt" employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

70. Plaintiff and the FLSA Collective should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

71. Defendants did not pay overtime compensation to Plaintiff and the FLSA Collective at the rate of one and one-half times their regular rate for all of their overtime hours.

72. By engaging in these practices, Defendants willfully violated the FLSA and regulations thereunder that have the force of law.

73. As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Plaintiff and the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Ohio Overtime Violations)

74. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

75. Plaintiff brings this claim for violation of the Ohio overtime compensation statute, O.R.C. § 4111.03.

76. At all times relevant, Defendants were employers covered by the Ohio overtime compensation statute, O.R.C. § 4111.03.

77. Defendants' failure to compensate overtime hours and Defendants' failure to pay employees for all hours worked violated the Ohio overtime compensation requirements set forth in O.R.C. § 4111.03.

78. These violations of Ohio law injured Plaintiff, the FLSA Collective, and Ohio Class in that they did not receive wages due to them pursuant to that statute.

79. Having injured Plaintiff, the FLSA Collective, and Ohio Class, Defendants are "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s]" under Ohio law. O.R.C. § 4111.10.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Ohio Class;

C. Enter judgment against Defendants, jointly and severally, and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class;

D. Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the Ohio Class in the amount of their unpaid wages, as well as liquidated damages in an equal amount; and

E. Award Plaintiff compensatory and punitive damages, his costs and attorneys' fees incurred in prosecuting this action, and such further relief as the Court deems equitable and just.

*s/ Kevin M. McDermott II*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*s/ Kevin M. McDermott II*
Kevin M. McDermott II (0090455)
